```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                      CENTRAL DIVISION at LEXINGTON
```

| | |
|---|---|
| ESSIE HUTSON, | ) |
| | ) |
|     Plaintiff, | ) Civil Action No. 5: 07-183-JMH |
| | ) |
| V. | ) |
| | ) |
| JOHN FELDER and DOUG COLE, | ) **MEMORANDUM OPINION AND ORDER** |
| | ) |
|     Defendants. | ) |
| | ) |

                          **\*\*\*\*    \*\*\*\*    \*\*\*\***

Defendants have filed a Motion and Renewed Motion for Summary Judgment [R. 16, 30] to which Plaintiff Essie Hutson ("Hutson") has filed a Response [R. 21] and Felder has filed a Reply in further support [R. 23]. This matter is now ripe for decision.

**I.   FACTUAL BACKGROUND**

On June 18, 2006, at approximately midnight, Hutson was driving south on Interstate 75 through Madison County, Kentucky, when Kentucky State Police ("KSP") Officer John Felder ("Felder") pulled behind her vehicle, put on his flashing lights, and pulled her over. Felder gave Hutson a speeding ticket for driving 80 miles per hour in a 65 mile per hour zone. Hutson alleges that she was traveling only 75 miles per hour, but acknowledges that she was speeding.

Hutson alleges that she then pulled back into traffic in a reasonable and safe manner, but that Felder immediately pulled her over again. Hutson called her OnStar emergency line and informed

1

the operator that she did not feel safe. Felder pounded on her window, opened her car door, and told her to put her hands up, and directed her to exit the vehicle.

Hutson alleges that KSP officer Doug Cole[1] then arrived in his cruiser. When Hutson asked why she was under arrest, both officers told her to "shut up," and "forcefully" placed her in handcuffs. The officers then allegedly retrieved the original citation from her purse and altered it to indicate that Hutson was traveling 90 miles per hour; had performed an improper start; and was driving recklessly. Hutson asserts that the Defendants treated her in this manner because of her race as an African-American.

The Defendants then transported Hutson to the Madison County Detention Center at approximately 1 a.m. Hutson alleges she was denied the opportunity to call either her family or an attorney prior to a hearing before a judge ten hours later. On June 19, 2006, Hutson was found guilty of the speeding violation and improper start from a parked position. The charge for reckless driving was dismissed.

Hutson filed her Complaint in this action on June 14, 2007. In her Complaint, Hutson alleges that the defendants' conduct (1) violated her rights under the Fourth and Fourteenth Amendments to be free from unreasonable searches and seizures by stopping her

---

[1] Hutson initially identified the second officer as J. Mosley, but subsequent discovery revealed that Cole was the second officer involved. Mosley has been dismissed as a defendant and Cole substituted in his place.

without probable cause and by using excessive force in her arrest; (2) violated her rights under the Equal Protection clause of the Fourteenth Amendment by acting on account of her race; (3) constituted false arrest under Kentucky law; (4) constituted false imprisonment under Kentucky law; and (5) constituted assault and battery under Kentucky law.  Hutson seeks compensatory and punitive damages.

The Defendants then filed a motion for summary judgment. [R. 16]  In their motion, Defendants asserted that Hutson is barred from pursuing her civil rights claims under *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), because success on her present claims would necessarily imply the invalidity of her criminal convictions, and because she has admitted that she was speeding.  They further asserted that, once the federal claims are dismissed, the Court should decline to exercise supplemental jurisdiction over her state law claims under 28 U.S.C. § 1367(c) and *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).

In addition to filing a response to the Defendants' motion in this Court, on April 28, 2008, nearly two years after her conviction and one year after filing her complaint in this action, Hutson filed a motion in state court to vacate her conviction for an improper start from a parked position.  The state court granted the motion, but the record does not disclose the basis asserted by Hutson to have this conviction vacated or the sentencing court's reasons for doing so.

In addition to the Defendants' motion for summary judgment, in the Sixth Circuit a district court may dismiss a claim, *sua sponte*, where it determines that a plaintiff's claim if the allegations supporting it are insubstantial, frivolous, or otherwise devoid of merit. *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (citing *Hagans v. Lavine,* 415 U.S. 528, 536-37 (1974)).

## II. DISCUSSION

### A. Summary Judgment Standard

The Court evaluates Defendants' motion under Federal Rule of Civil Procedure 56, which provides, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(c); *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992). Under Rule 56, the Court must determine what the applicable law requires and decide whether the facts as presented by the parties would sustain a jury verdict in favor of the non-moving party. If the non-movant has not presented evidence to support one essential element of her claim, even when viewed in a light most favorable to her, then summary judgment must be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). If the totality of the evidence submitted "would require a directed verdict for the moving party," summary judgment is required. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

**B.** *Heck v. Humphrey*

In *Heck v. Humphrey*, the Supreme Court held that

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck v. Humphrey*, 512 U.S. 477, 487 (1994). Here, Hutson challenges the constitutionality of certain actions taken by officers during her arrest. But to determine whether *Heck* precludes the assertion of a particular claim, the court must determine not merely whether the events complained of generally by the plaintiff were related to her subsequent arrest, prosecution, and conviction, *Cottrell v. Kaysville City, Utah*, 994 F.2d 730, 733 (10th Cir. 1993), but rather whether the particular allegations made by the plaintiff, if found to be true, would contradict a finding of guilt in the prior criminal proceedings.

**1. Arrest without Probable Cause**

Hutson first alleges that the officers lacked probable cause to pull her over for a traffic violation in violation of the Fourth

5

and Fourteenth Amendments. She appears to concede that the officers possessed probable cause for the first stop, as she admits to driving 75 miles per hour in a 65 mile-per-hour zone. What she does contest is the officers' conduct thereafter, commencing with whether the officers had probable cause for the second stop, as she contends she did not make an improper start from a stopped position.

The Fourth Amendment prohibits government officials from subjecting citizens to unreasonable searches or seizures without proper authorization. Without such authorization a search or seizure is presumptively unreasonable, subject to certain narrow exceptions. *Katz v. United States*, 389 U.S. 347, 357 (1967). Before police may arrest a citizen, the Fourth Amendment requires that police have probable cause to believe criminal activity is at hand. *Dunaway v. New York*, 442 U.S. 200, 212-14 (1979). If a police officer nonetheless arrests a citizen where probable cause is so clearly absent that the officer sheds his or her qualified immunity, the officer may be held accountable under Section 1983 for the wrongful arrest. *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000).

However, where a citizen is convicted of the offense which provoked the arrest, probable cause for the arrest is conclusively established, and *Heck* presents an absolute bar to any claim for false arrest under Section 1983. *Johnson v. Arndt*, 2005 WL 348409 (9th Cir. 2005) (arrestee was barred under *Heck* from bringing

6

illegal seizure and wrongful arrest claims against police officers where success on claims would have necessarily implied invalidity of his convictions, and arrestee had not demonstrated that those convictions had been overturned); *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996). Even where probable cause does not exist on the offense for which the plaintiff was arrested, *Heck* bars the claim so long as probable cause exists for arrest on a closely-related charge. *Biddle v. Martin*, 992 F.2d 673, 676 (7th Cir. 1993). The existence of probable cause will bar a Section 1983 claim even where the arrest was prompted by malice or other improper motives. *Sarantakis v. Village of Winthrop Harbor*, 969 F.Supp. 1095 (N.D.Ill. 1997).

In this case, Hutson was convicted of both the initial speeding charge and the subsequent charge of making an improper start from a stopped position. Those convictions conclusively established probable cause for the initial stop and the subsequent stop after she received her first ticket, and *Heck* applies to bar these claims. *Gardenhire*, 205 F.3d at 315.

On April 28, 2008, at Hutson's request the trial court set aside her conviction for an improper start from a parked position. [R. 34 Exh. 1[2]] However, the document tendered by Hutson does not explain the trial court's reasoning in granting her request. *Heck*

---

[2] The document submitted by Hutson to demonstrate this fact has not been authenticated, but the Court assumes its validity for purposes of this discussion.

bars the assertion of civil claims for wrongful arrest or malicious prosecution absent proof that the prior criminal convictions were dismissed or vacated *in a manner which negatives the existence of probable cause*, such as upon a finding of innocence. *See Brown v. Willey*, 391 F.3d 968, 970 (8th Cir. 2004) (prior state court convictions conclusively proved existence of probable cause for police officer to make arrests even where state appellate court dismissed convictions for lack of speedy trial where appellate court did not overturn convictions upon finding of innocence following trial on merits) (citing *Rogers v. Carter*, 133 F.3d 1114, 1117 (8th Cir. 1998)). Because Hutson has not shown that the trial court set aside her conviction on a ground which undermined the prior implicit finding of probable cause, Hutson's Fourth Amendment claims remain barred by *Heck*. *Bergstralh v. Lowe*, 504 F.2d 1276 (9th Cir. 1974).

Hutson's state law claims of false arrest and false imprisonment are also predicated upon the absence of probable cause for the arrest. These two claims are in fact one under Kentucky law: "in instances involving officers of the law there is simply no distinction between false arrest and false imprisonment." *Lexington-Fayette Urban County Government v. Middleton*, Ky.App., 555 S.W.2d 613, 619 (1977). But "a necessary element of that tort is that the complained-of arrest be unlawful ... [unless the conviction is vacated] that claim fails for the same reasons as [a] Fourth Amendment false arrest claim." *Cunningham v. Sisk*, 2005 WL

8

1285649, **5 (6th Cir. 2005); *Dunn v. Felty*, Ky., 226 S.W.3d 68, 71 (2007) (absence of probable cause or other legal authority for arrest is element of cause of action for false arrest). As with her Fourth Amendment claim, Hutson's conviction on the charge of an improper start conclusively established probable cause and thus the lawfulness of her arrest, and therefore *Heck* bars her state law claims of false arrest and false imprisonment.

Finally, to the extent Hutson seeks to press a functionally-identical claim under the Due Process Clause of the Fourteenth Amendment, it must fail: "reliance on the Due Process Clause is misplaced, however, because it is the Fourth Amendment which establishes procedural protections in this part of the criminal justice area." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 313 (6th Cir. 2005).

### 2. **Excessive Force**

Hutson alleges in her Complaint that Defendants "forcefully" placed her in handcuffs. Hutson asserts a claim under the Fourth Amendment for the use of constitutionally-excessive force and for assault and battery under Kentucky law.

The Defendants have asserted that this claim is barred under *Heck*. The Court disagrees: a claim that an officer used excessive force in effecting an arrest is logically distinct from the validity of a conviction on the underlying offense. *See, e.g., Robinson v. Doe*, 272 F.3d 921, 923 (7th Cir. 2001) ("Police might well use excessive force in effecting a perfectly lawful arrest.

9

And so a claim of excessive force in making an arrest does not require overturning the plaintiff's conviction even though the conviction was based in part on a determination that the arrest itself was lawful."); *Hodge v. City of Elyria*, 2005 WL 513486 (6th Cir. 2005) ("whether the Defendants are found to have used excessive force or not, the validity of Hodge's criminal conviction will not be [a]ffected").

Nonetheless, the Court concludes that Hutson's Fourth Amendment claim for excessive force fails to state a claim as a matter of law under established Sixth Circuit precedent. While Hutson alleges that Defendants placed her in handcuffs "forcefully," she makes no allegation that she actually suffered a physical injury as a result of their actions. Temporary or minor discomfort is not sufficient injury to state a claim of constitutional magnitude: some physical contact and interaction is required by the very act of placing an individual into handcuffs. With respect to any kind of excessive force claim under the Fourth Amendment, to state a constitutional claim an arrestee must allege that the officer used more than *de minimus* force, that the force used was excessive, and that he or she suffered some objectively verifiable injury and/or actively sought medical attention thereafter. *Leary v. Livingston County*, 528 F.3d 438, 443 (6th Cir. 2008)("McGuckin's actions, while rude and unprofessional, did not rise to the level of a cognizable constitutional claim. As a matter of state tort law, it may be that the least touching of

10

another in anger is a battery, but that does not make it a violation of a constitutional right actionable under 42 U.S.C. § 1983.") (*citing Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992)). This rule is strictly enforced in handcuffing cases. *Lustig v. Mondeau*, 2006 WL 3253496, **2 n.4 (6th Cir. 2006) ("to reach a jury on a claim that tight handcuffing amounted to excessive force, the plaintiff must allege some physical injury from the handcuffing."); *Lyons v. Xenia*, 417 F.3d 565, 575-76 (6th Cir. 2005).

Further, in handcuffing cases the Sixth Circuit has required the arrestee to show that the police ignored an affirmative complaint that the handcuffs were too tight. *Pigrim ex rel. Pigram v. Chaudoin*, 2006 WL 2860773, **4 (6th Cir. 2006) ("Under *Lyons*, a plaintiff must demonstrate that he complained to the officers and that his complaints were ignored. In the absence of a complaint to the officer, no constitutional violation can be said to have occurred."); *Burchett v. Kiefer*, 310 F.3d 937, 944-45 (6th Cir. 2002). Because Hutson makes no such allegation, her Complaint fails to state a claim for violation of the Fourth Amendment.

The Court reaches no conclusion regarding the viability of her claim that the Defendants' conduct amounted to an assault and battery under Kentucky law.

**3.   Unlawful Search**

Hutson alleges that after she was handcuffed the officers retrieved the original ticket from inside her purse, which was

11

laying on the seat in her vehicle, and altered the speed stated on the ticket. It is not clear from her Complaint or supporting papers whether she intends to urge this conduct as a distinct ground for recovery as an unlawful search, but such a claim would fail as a matter of law. Once police officers lawfully place a citizen under arrest, they are entitled to conduct a search incident to that arrest without a warrant. *Chimel v. California*, 395 U.S. 752, 763 (1969). This search may include a search of the arrestee's wallet or purse. *United States v. Birdsong*, 1987 WL 36947, **2 (6th Cir. 1987) (purse may be searched incident to arrest); *United States v. Thomas*, 11 F.3d 620, 628 (6th Cir. 1993) (purse sitting in front seat of pickup may be validly searched incident to arrest of passenger as well as for inventory search).

### 4. **Equal Protection**

Finally, Hutson alleges that the officers violated her rights under the Equal Protection Clause of the Fourteenth Amendment because they arrested and charged her with an improper start "because of Plaintiff's race, African American, ..." Such "selective prosecution" claims may be established under the Equal Protection Clause where the plaintiff alleges purposeful discrimination by officials based upon an impermissible factor, such as race, religion, or gender. *Oyler v. Boles*, 368 U.S. 448, 456 (1962).

It appears that the greater weight of authority holds that *Heck* bars a claim that police selectively targeted an arrestee for

12

prosecution based upon their race. Some courts suggest that such a claim does not imply the invalidity of the underlying charge and conviction, only the reason for pursuing it. *See Wells v. King*, 2007 WL 1166126 (3rd Cir. 2007); *Sanford v. Motts*, 258 F.3d 1117, 1119 (9th Cir. 2001). But a number of courts have held that such a claim directly challenges the underlying conviction, and thus runs afoul of *Heck*. *Gibson v. Superintendent*, 411 F.3d 427, 451-52 (3d Cir. 2005) (*Heck* bars claim factually related to sole evidence supporting conviction); *Hayden v. Pataki*, 449 F.3d 305, 314 n.8 (2nd Cir. 2006) (claim that criminal conviction was product of racial discrimination would be barred by *Heck*); *Jackson v. Loftis*, 2006 WL 2053822, \*\*2-3 (10th Cir. 2006) (*Heck* bars claim that arrest was product of racial profiling where arrestee was subsequently prosecuted and convicted). Based on the foregoing authority, the Court concludes that plaintiff's allegations of racial profiling are inextricably intertwined with her prosecution and conviction, and hence are barred by *Heck*. *Id*. at \*\*3-4.

Even if this were not so, an arrestee must allege far more than just the presence of racially-based motivation to support a selective prosecution claim. As the Sixth Circuit has explained:

> To prevail on a claim of selective enforcement in violation of the Equal Protection Clause, a plaintiff must satisfy the three-part test set out in *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir. 1991) (citations omitted, emphasis in original):
>
> > First, [an official] must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group

13

> exercising constitutional rights, for prosecution
> even though he has decided not to prosecute persons
> not belonging to that group in similar situations.
> Second, he must initiate the prosecution with a
> discriminatory purpose. Finally, the prosecution
> must have a discriminatory effect on the group
> which the defendant belongs to.

*Cunningham v. Sisk*, 2005 WL 1285649, pg. **3 (6th Cir. 2005).

Here, as in *Cunningham*, Hutson alleges that the officers acted with a racially-discriminatory motive. This allegation is germane to the second requirement. But the law requires the arrestee to satisfy the first and third elements as well: "it is an absolute requirement that the plaintiff make at least a *prima facie* showing that similarly situated persons outside [his] category were not prosecuted." *Gardenhire v. Schubert*, 205 F.3d 303, 319 (6th Cir. 2000). This requirement is not one merely of ultimate proof, but one of pleading: the arrestee must allege all of the facts necessary to support the required elements of a cause of action for selective prosecution, including those related to non-prosecution of those outside the protected class and discriminatory impact. *Fox v. Michigan State Police Dep't.*, 03-CV-434 (W.D. Mich. 2004), *dismissal affirmed*, 2006 WL 456008 (6th Cir. 2006); *see also Oliver v. Cuttler*, 968 F.Supp. 83 (E.D.N.Y. 1997) (driver's failure to prove or allege that similarly-situated nonminorities would have been treated differently during course of traffic stop was fatal to federal civil rights claim against state patrol officer where his claim of racial slurs, by itself, could not state violation of equal protection).

In addition, "there is a strong presumption that the state actors have properly discharged their official duties, and to overcome that presumption the plaintiff must present clear evidence to the contrary; the standard is a demanding one." *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997). In light of that "strong presumption," the Sixth Circuit has vigorously enforced the requirement that claims of racial discrimination in traffic stops be supported by each of the allegations required by *Anderson* in order to state a viable claim:

> Here Cunningham has proffered nothing to suggest that similarly situated people (speeders) of different races were treated differently in terms of arrest or search or the issuance of traffic citations. Instead he appears to base his selective enforcement claim solely on the fact that he is African-American and that Sisk and McDowell are white. Quite apart from his failure to explain away the fact that Bryant was also African-American, which would obviously tend to undercut any such claim, that effort to play the race card *simpliciter* lacks probative force as an asserted material (that is, outcome-determinative) fact, particularly in the face of the "strong presumption" in selective enforcement cases "that the state actors have properly discharged their official duties" (*Gardenhire, id.*). We share the district court's view that Cunningham's selective enforcement claim also fails as a matter of law.

*Cunningham v. Sisk*, 2005 WL 1285649, pg. **3 (6th Cir. 2005). Here, the Court accepts as true for purposes of this motion Hutson's claim of racially-motivated action. But in the absence of any allegation to support the other two required elements of *Anderson*, Hutson has failed to state the required elements of a selective prosecution claim under the Fourteenth Amendment. *Cf. Scott v. Macy's East, Inc.*, 2002 WL 31439745 (D. Mass. 2002)

15

(dismissing Equal Protection claim absent allegation that officers would have treated white person any differently in similar circumstances when arrestee became belligerent).

### 5. Exercise of Supplemental Jurisdiction

The Court has concluded that all of Plaintiff's claims except that for assault and battery must be dismissed. If a federal district court has dismissed all of the federal claims which provide the basis for its subject matter jurisdiction prior to trial, the court has discretion to dismiss pendent state law claims without prejudice. 28 U.S.C. § 1367(c); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966); *Smith v. Dearborn Finan. Serv.*, 982 F.2d 976, 983 (6th Cir. 1993). Due respect for comity with state courts and their prerogative to decide matters of state law generally counsel against the unnecessary resolution of state matters by a federal court. *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997); *Wainwright v. County of Oxford*, 369 F.Supp.2d 3, 9 (D. Me. 2005). The Court therefore concludes under *Gibbs* that it should decline to exercise subject matter jurisdiction over a sole remaining state law claim after having dismissed all of the plaintiff's federal claims. Plaintiff's assault and battery claim under Kentucky law will therefore be dismissed, without prejudice, under Section 1367(c).

### III. Conclusion

Accordingly, **IT IS ORDERED** that:

16

1. Defendants' Motion for Summary Judgment [R. 16] and Renewed Motion for Summary Judgment [R. 30] are **GRANTED** in accordance with this Memorandum Opinion and Order.

2. Plaintiff's claims (1) under the Fourth and Fourteenth Amendments for arrest without probable cause and excessive force; (2) under the Equal Protection Clause of the Fourteenth Amendment for acting on account of her race; and (3) under Kentucky law for false arrest and false imprisonment; are **DISMISSED WITH PREJUDICE**.

3. Plaintiff's claim under Kentucky law for assault and battery is **DISMISSED WITHOUT PREJUDICE**.

4. An appropriate Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Defendants.

5. This is a final and appealable order.

This the 10th day of September, 2008.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge